IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| RAYNE YARDLEY,<br><br>                              Plaintiff,<br><br>v.<br><br>RAYMOND TAPIA, an individual, and SCHOLASTIC INC., a foreign corporation,<br><br>                              Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS<br><br><br>Case Number 4:25-cv-00006-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

Before the Court is Defendants' Motion for Sanctions.[1] For the reasons discussed below, the Court DENIES the Motion.

## I. BACKGROUND

On January 24, 2022, Plaintiff was a passenger in a truck being driven by his cousin, Coy Brindley, when it collided with a box truck owned by Defendant Scholastic Inc. and driven by Defendant Raymond Tapia. The truck in which Plaintiff was a passenger belonged to Coy's father and Plaintiff's uncle, Brett Brindley. After the accident, the truck was brought to a tow yard and Plaintiff and Coy were taken to the hospital. After Plaintiff was discharged from the hospital later that evening, he, his mother, and sister went to the tow yard to see the truck. All who were present at the tow yard testified that they did not enter the truck, did not remove anything from it, and made no alterations to it.[2] The owner of the tow yard testified that he would not have permitted

---

[1] Docket No. 35, filed June 30, 2026.

[2] The Court's citations are to the page numbers generated by CM/ECF. *See* Docket No. 35-2, at 108–09; Docket No. 35-6, at 10; Docket No. 37-5, at 35; Docket No. 37-6, at 31–33, 36–37, 44.

any such activities.[3] Instead, Plaintiff and his companions took pictures and a short video of the damage to the truck. That evidence has been provided to Defendants.

The truck remained at the tow yard for approximately one year. At that point, a buyer approached the tow yard owner seeking to purchase the vehicle. That offer was passed along to the truck's owner who agreed and the funds were used to settle the tow yard's bill. At no time during the year the vehicle was at the tow lot did anyone place a litigation hold on the truck. Had one been placed, the owner of the tow yard testified that he would have complied with it.[4]

In the current Motion, Defendants seek sanctions for Plaintiff's visit to the tow yard on the night of the accident and the ultimate sale of the truck. Defendants argue that these actions have prevented them from accessing important evidence material to its defense. Plaintiff opposes Defendants' request.

## II. DISCUSSION

Spoliation is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.[5] In the Tenth Circuit, spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of evidence.[6] The moving party bears the burden of proving spoliation sanctions are appropriate.[7]

---

[3] Docket No. 35-3, at 38.

[4] *Id.* at 37.

[5] *Moreno v. Taos Cnty. Bd. Of Comm'rs*, 587 F. App'x 442, 444 (10th Cir. 2014).

[6] *Id.*

[7] *See e.g., Rains v. Westminster Coll.*, No. 2:20-cv-00520, 2023 WL 2894506, at *2 (D. Utah Apr. 11, 2023).

If spoliation has occurred, the Court may impose a variety of sanctions including dismissal, default judgment, preclusion of evidence, imposition of an adverse inference, or assessment of attorney's fees and costs.[8] The severity of the sanction should correspond to the willfulness of the spoliator's destructive act and the prejudice suffered by the non-spoliating party.[9] An adverse-inference jury instruction is only appropriate if the spoliating party intentionally destroyed evidence or acted in bad faith.[10]

Before addressing the relevant factors, the Court first considers whether Plaintiff had control over the truck. A "threshold inquiry in determining if spoliation is applicable to a particular case is whether the party so accused had control over the evidence that was lost or destroyed."[11] Here, there is no evidence that Plaintiff had such control. The truck was owned by his uncle and was stored at a tow yard after the crash until it was eventually sold. There is nothing to suggest that Plaintiff, a minor who had no ownership interest in the truck, had control over it. Rather, the evidence suggests that Plaintiff's uncle, the owner of the vehicle, had sole control over it. Thus, Plaintiff "lack[s] the level of culpability required for the spoliation of evidence outside of [his] control."[12]

Assuming for the sake of argument that Plaintiff was able to exert control over the truck, the Court turns to whether Plaintiff had a duty to preserve it. A duty to preserve generally arises

---

[8] *Fox v. Steepwater LLC*, No. 2:16-cv-796 BCW, 2018 WL 2208308, at *2 (D. Utah May 14, 2018) (collecting cases).

[9] *Id.*

[10] *Moreno*, 587 F. App'x at 444.

[11] *Rains*, No. 2:20-CV-00520, 2023 WL 2894506, at *5 (D. Utah Apr. 11, 2023) (internal quotation marks and citation omitted).

[12] *Jones v. Norton*, 809 F.3d 564, 581 (10th Cir. 2015).

3

when a party "knew, or should have known, that litigation was imminent."[13] "In most cases, the duty to preserve evidence is triggered by the filing of a lawsuit. However, the obligation to preserve evidence may arise even earlier if a party has notice that future litigation is likely."[14] In evaluating when a duty to preserve has been triggered, courts "consider the extent to which a party was on notice that litigation was likely and that the information would be relevant."[15] "In determining whether a party's duty to preserve has been triggered, courts evaluate facts such as the likelihood that a certain kind of incident will result in litigation; the knowledge of certain employees about threatened litigation based on their participation in the dispute; or notification received from a potential adversary."[16]

Defendants argue that Plaintiff's duty to preserve is evidenced by his visit to the tow yard the night of the accident, his consultation with an attorney at some point in 2023 or 2024, and his claim against the driver and owner of the truck, which was resolved in April 2024. None of these events support that Plaintiff's duty to preserve arose before the truck was sold. The testimony concerning the visit suggests that it was largely out of curiosity, not preserving or tampering with evidence.[17] Plaintiff's consultation with an attorney and claim against the driver and the owner of the truck both occurred after the truck was sold.[18] There is nothing to suggest that Plaintiff was contemplating litigation against Defendants during this time. Indeed, Plaintiff's sister, with whom

---

[13] *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009).

[14] *Cache La Poudre Feeds, LLC v. Land O' Lakes Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007).

[15] *Zybliski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1163 (D. Colo. 2015) (quoting Fed. R. Civ. P. 37 advisory committee's notes to 2015 amendment).

[16] *Id.*

[17] *See* Docket No. 35-2, at 74–75; Docket No. 37-5, at 35; Docket No. 37-6, at 31–33, 36–37, 44.

[18] Docket No. 35-2, at 106; Docket No. 35-6, at 8.

4

he has a very close relationship, testified that she did not know of his litigation until around the time the Complaint was filed.[19] Nor is this the type of case that was certain to result in litigation. Therefore, Defendants have failed to demonstrate that Plaintiff had a duty to preserve the truck prior to its sale.

Next, the Court considers Defendants' alleged prejudice. The determination of whether a party seeking spoliation sanctions has been prejudiced turns on the specific facts of the case, and relevance is a necessary component of proving such prejudice.[20] It is not enough for a party seeking spoliation sanctions to raise an issue of theoretical prejudice, i.e., that prejudice cannot be known because the evidence no longer exist.[21] This is true in any instance involving the destruction of evidence.[22] Rather, a party must present evidence of actual prejudice.[23] A party suffers actual prejudice when the spoliated evidence goes to a critical issue and the evidence at hand is conflicting.[24] Conversely, when a non-spoliating party has other sources of information such as pre-spoliation photographic evidence, courts have found that there is no actual prejudice.[25]

---

[19] Docket No. 37-6, at 38, 46.

[20] *Bloom v. Toliver*, No. 12-cv-169-JED-FHM, 2015 WL 5344360, at *2 (N.D. Okla. Sept. 14, 2015) (citing *Henning v. Union Pac. R.R.*, 530 F.3d 1206, 1219–20 (10th Cir. 2008)).

[21] *Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2012 WL 2370110, at *3 (D. Kan. June 21, 2012) (citing *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1150 (10th Cir. 2009)).

[22] *Id.*

[23] *Id.*

[24] *Pepe v. Casa Blanca Inn & Suites LLC*, No. 18-cv-476-NDF-KHR, 2020 WL 5219391, at *3 (D.N.M. Apr. 10, 2020) (internal quotation marks and citation omitted).

[25] See *McCauley v. Bd. Of Comm'rs for Bernalillo Cnty.*, 603 F. App'x 730, 736 (10th Cir. 2015) (finding no spoliation because the party had access to other evidence); *But see Pepe*, 2020 WL 5219391, at *3 (pre-spoliation photographic evidence does not necessarily equate to theoretical, rather than actual, prejudice).

Here, Defendants' complaints are all speculative and, indeed, are conflicted by the only testimony provided. Defendants speculate that Plaintiff may have "inadvertently disturbed, moved, or altered critical components of the vehicle"[26] when he visited the tow yard on the night of the incident. Defendants go on to complain that they do not know "what was accessed, taken, or done" "when Plaintiff accessed the truck."[27] Defendants provide no support for the speculation that Plaintiff somehow tampered with or altered the truck when he visited the tow yard and the testimony from those present directly refutes this claim. Plaintiff, his mother, and his sister all testified that they did not enter the truck, did not take anything, and did not make any alterations.[28] Defendants provide nothing to refute this testimony, which was provided under penalty of perjury. Moreover, the owner of the tow yard made clear that he would not have permitted such conduct.[29] Even if Defendants were able to provide some evidence to suggest some nefarious conduct at the tow yard, there is nothing to suggest that it resulted in any prejudice to their defense. Defendants fail to identify any item that may have been taken or component that may have been altered that is detrimental to them.

Defendants also suggest that the sale of the truck deprived them of relevant evidence. They again speculate that "[i]t is *highly likely* that the truck data and forensics, if it had been properly preserved, *could* have been retrieved and used in reconstruction analyses."[30] Yet Defendants appear to tacitly acknowledge that they don't know whether such evidence even existed and, if it

---

[26] Docket No. 35, at 9.

[27] *Id.* at 10.

[28] Docket No. 35-2, at 108–09; Docket No. 35-6, at 10; Docket No. 37-5, at 35; Docket No. 37-6, at 31–33, 36–37, 44.

[29] Docket No. 35-3, at 38.

[30] Docket No. 35, at 9 (emphasis added).

did, that it would have proven beneficial. Defendants argue that "the Chevy Truck black box data, *if any*, and forensic information from the day of the incident" could support Defendants' claim that the truck was being recklessly driven.[31] Defendants cannot show prejudice if the evidence they seek may not have ever existed in the first place. Further, the usefulness of any such evidence remains uncertain. Had Defendants truly believed the truck contained valuable evidence, they could have placed a litigation hold, which would have been honored by the tow yard owner. Finally, Defendants have other sources of information to show the conditions of the truck. The parties have videos and photographs of the crash scene, as well as the photos and video taken at the tow yard, which the parties can use in evaluating and presenting their cases. In short, Defendants provide no evidence of any actual harm, only speculation.

Because the Court cannot conclude that Plaintiff spoliated evidence or that Defendants suffered prejudice, Defendant's request for sanctions is only briefly addressed. Defendants request, among other sanctions, an adverse inference instruction. In so doing, Defendants rely heavily and unhelpfully on inapplicable Utah law. To receive an adverse inference jury instruction, Defendants must prove that Plaintiff acted intentionally or in bad faith. Defendants fail to come close to this showing. Defendants' request for other sanctions, such as barring evidence, cost shifting, and attorney's fees fail for the same reason. Defendants have failed to demonstrate any basis for the imposition of sanctions. Further, evidentiary issues and instructions to the jury are better addressed by the assigned District Judge.

---

[31] *Id.* at 10 (emphasis added).

## III. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Spoliation Sanctions (Docket No. 35) is DENIED.

SO ORDERED this 29th day of July, 2026.

BY THE COURT:

_____

PAUL KOHLER
United States Magistrate Judge